IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RANDY ANDREW RAMER, | : | |
| | : | 4:09-cv-1791 |
| Plaintiff, | : | |
| | : | Hon. John E. Jones III |
| v. | : | |
| | : | Hon. Malachy E. Mannion |
| MARY LONG, RON WELLER, and | : | |
| DANIEL SHOOP, | : | |
| Defendants. | : | |

# MEMORANDUM

## March 10, 2010

**THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

This matter is before the Court on the Report and Recommendation ("R&R") of Magistrate Judge Malachy E. Mannion (Doc. 55), filed on November 30, 2010, which recommends that we grant the Defendants' converted Motion for Summary Judgment.[1] (Doc. 37). As a result of this recommendation, Magistrate

---

[1] The Motion was originally filed as a Motion to Dismiss, however, because the parties relied on a panoply of documents outside the pleadings, Magistrate Judge Mannion converted the Motion into one for summary judgment. (Doc. 41). As set forth in detail in the R&R, Magistrate Judge Mannion gave the parties appropriate time to file additional briefs and/or supporting exhibits on the converted Motion. Further, we agree with Magistrate Judge Mannion that he was not required to advise Plaintiff of his ability to file a Rule 56(f) affidavit to forestall summary judgment pursuant to *Rencheski v. Wililams*, 622 F. 3d 315 (3d Cir. 2010) because Plaintiff is not a *pro se* prisoner. Moreover, we find that Magistrate Judge Mannion's notice of the conversion of the Motion was entirely appropriate, and that the parties, Plaintiff in particular, did file multiple submissions with the Court containing exhibits following the conversion of the Motion.

Judge Mannion recommends that several miscellaneous motions be dismissed as moot.

*Pro se* Plaintiff Andrew Ramer ("Plaintiff" or "Ramer") has filed several documents in objection to the R&R, to which Defendants have responded.[2] (Docs. 56, 58, 59, 60, 61, 62, 64 and 68). Accordingly, this matter is ripe for our disposition. For the reasons that follow, the Defendants' converted Motion for Summary Judgment shall be granted and this case shall be closed.

## I. BACKGROUND

This case has a lengthy and meandering procedural background, which for the sake of judicial economy shall not be recited herein. Rather, the Court refers the reader to pages 3 to 9 of the R&R for a full exposition of the procedural history. In short, Plaintiff's Amended Complaint brings a 42 U.S.C. § 1983 claim for deprivation of constitutional rights against Defendants Mary Long, Ron Weller and Daniel Shoop.[3] In addition, it would appear that Plaintiff is attempting to set forth a claim pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C.

---

[2] Plaintiff has also filed a Motion for Appointment of Counsel. (Doc. 65). As we ultimately determine that summary judgment must be granted in this case because, *inter alia*, the Defendants' are protected by qualified immunity, Plaintiff's request for counsel shall accordingly be denied.

[3] Defendants Long and Weller are employed by Northumberland County Children & Youth Services and Defendant Shoop is a Northumberland County Adult Probation Officer.

2

§ 12101, *et seq.*, based upon the Defendants' failure to provide him with shelter during a period of displacement from his home.

The action arises out of the following set of facts, gleaned from the submissions of the parties. Ramer, who is mentally impaired, lives with his parents, sister and sister's three minor children. In September of 1999, the Plaintiff was suspected of molesting his minor niece, with whom he lives. On October 6, 1999, Northumberland County Children and Youth Services ("NCCYS") received a Child Protective Services referral alleging the sexual abuse of the minor child. The child was interviewed on two separate occasions in October 1999, and on both occasions, confirmed the allegations. The Plaintiff was also interviewed and confirmed the allegations.[4]

Plaintiff was ultimately acquitted of criminal charges arising out of the aforementioned facts, however, pursuant to the Pennsylvania Child Protective Services Act ("CPSA"), 23 Pa. C. S. § 6310, *et seq.*, the case was considered and "indicated case" of sexual assault based upon the Plaintiff's admission of the events. *See* 23 Pa. C. S. § 6303(a)(An "indicted report" is a child abuse report made if an investigation by the county agency or the Department of Public Welfare

---

[4] Plaintiff claims that he did not admit to the offense, however, as Magistrate Judge Mannion notes, there are two separate documents in the record which indicate that Ramer admitted to rubbing his minor niece's vagina. (Doc. 38, Ex. B; Doc. 49, Ex. L).

determines that substantial evidence of the alleged abuse exists based upon, *inter alia*, an admission of the acts of abuse by the perpetrator).  Pursuant to the CPSA, the information was relayed to the Pennsylvania Department of Welfare via the ChildLine Registry.[5]

Subsequently, almost ten years later, on July 26, 2009, Ramer was cited by the Pennsylvania State Police ("PSP") for, *inter alia*, making sexual gestures towards three individuals, one of whom was a nine-year old child.  NCCYS became aware of this incident on or around August 26, 2009.  At that time, Defendant Weller, a caseworker of NCCYS, visited Ramer at his parent's house, where he was still residing with his parents, sister and her three minor children.  Upon inquiry, Weller was informed by Ramer's father that Ramer was allowed to reside in the family home with the three minor children pursuant to a safety plan, previously put into place by NCCYS, that prohibited Plaintiff from being left alone with the minor children.

Two days later, Defendant Long, also a NCCYS employee, contacted Northumberland County Adult Probation to inquire about the charges against the Plaintiff and was informed that the charges were still pending.   Defendant Long also called the PSP Corporal who issued Ramer's citation.  The Corporal reported

---

[5] The ChildLine Registry is a central register of confirmed child abuse reports in the Commonwealth of Pennsylvania.

that Ramer made gestures imitating masturbation to three individuals, including the nine-year old girl. In addition, NCCYS was informed that there were additional allegations against Ramer indicating that he had harassed another female victim by calling her repeatedly and asking for a date.[6]

On September 1, 2009, Defendant Weller contacted Defendant Shoop, the probation officer assigned to Ramer's case, to obtain more information about Ramer. Defendant Shoop informed Defendant Weller that he had limited information at the time, but knew that Ramer had received a citation for harassing and making sexual gestures towards three victims, one of which was a nine year-old girl.

On September 2, 2009, Defendant Weller called the ChildLine Registry to check the Plaintiff's history and was informed about the 1999 incident involving Ramer's niece. Following the receipt of this information, Defendant Weller returned to the Ramer residence and informed the Ramer family that Plaintiff could not reside there with the minor children while the investigation into the July 2009 charges were pending. After discussing the matter, and although upset with the

---

[6] In relation to this incident, Plaintiff was charged with stalking and harassment. On May 17, 2010, Ramer entered a plea of *nolo contendere* to the harassment and the stalking charge was dismissed. Ramer was assessed fees and costs.

situation, the family agreed that Plaintiff would thereafter stay with his uncle at his home nearby until the investigation was complete.

On September 8, 2009, six days after Plaintiff was removed from the Ramer home, Defendant Weller contacted the Ramer family to inform them that Plaintiff was permitted to return home, but that he was still not permitted to have unsupervised contact with the minor children as provided for in the safety plan.

After the period of displacement from his home, Plaintiff filed an appeal with the Pennsylvania Department of Public Welfare to have his indication as a sexual abuser expunged from the ChildLine Registry. On October 13, 2010, his appeal was sustained and the Department of Public Welfare was directed to expunge the indicated report from the ChildLine Registry.

## II. STANDARDS OF REVIEW

### A. Review of Magistrate Judge's R&R

When objections are filed to the report of a magistrate judge, the district court makes a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objections are made. 28 U.S.C. § 636(b)(1); *United States v. Raddatz*, 447 U.S. 667, 674-75 (1980). The court may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations. *Id.* Although the standard of review is *de novo*, 28 U.S.C. §

636(b)(1) permits whatever reliance the district court, in the exercise of sound discretion, chooses to place on a magistrate judge's proposed findings and recommendations. *Raddatz*, 447 U.S. at 674-75; *see also Mathews v. Weber*, 423 U.S. 261, 275 (1976); *Goney v. Clark*, 749 F.2d 5, 7 (3d Cir. 1984).

B. **Summary Judgment**

Summary judgment is appropriate if the record establishes "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325. Once the moving party meets its burden, the burden then shifts to the non-moving party to show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). An issue is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law. *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 248-49 (1986).

In opposing summary judgment, the non-moving party "may not rely merely on allegations of denials in its own pleadings; rather, its response must ... set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985). However, the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the non- moving party. *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be a *genuine* issue of *material* fact to preclude summary judgment." *Anderson*, 477 U.S. at 247-48.

**III. RECOMMENDATIONS IN THE R&R**

Magistrate Judge Mannion makes several recommendations in the R&R. They are as follows:

(1) That the Motion be granted with respect to Plaintiff's § 1983 claims because Defendants are entitled to qualified immunity on the civil rights claims;

(2) That summary judgment be granted in favor of the Defendants on Plaintiff's ADA claim;

(3) That Plaintiff's claim that Defendant Shoop violated his constitutional rights by providing information about him to NCCYS be dismissed because there is no indication that Defendant Shoop's conduct violated Plaintiff's civil rights; and

(4) That the various miscellaneous pending motions pending in this case be dismissed as moot; and

(5) That this case be closed.

**IV. DISCUSSION**

As noted above, Plaintiff has filed several documents in response to the R&R issued by Magistrate Judge Mannion. While stated differently in each submission, Ramer's main concern is that he is wrongfully considered an

"indicated" sexual predator by the Pennsylvania Department of Welfare. Nowhere in Plaintiff's submissions does he directly confront the recommendations of the Magistrate Judge, other than to assert that Magistrate Judge Mannion erred in his recommendations.

As previously discussed, since this action was filed, Ramer was successful on his appeal to the Pennsylvania Department of Public Welfare and his record of having committed "indicated" sexual assault has been expunged. Thus, to the extent Ramer sought to have the stigma of having committed an "indicated" sexual assault removed from his records, this has been achieved by him through the administrative appeal process. However, the fact that Ramer has been successful in his quest to have his sexual assault record expunged with respect to the 1999 incident does not change the ultimate disposition of this case. To be sure, this case concerns the Defendants' conduct in the late summer and fall of 2009, nearly a year before Ramer's record was expunged.

We have thoroughly and carefully reviewed both the voluminous record in this case as well as the Magistrate Judge's R&R. Everything before the Court indicates that Defendants Long and Weller are protected from the Plaintiff's claims by the doctrine of qualified immunity, as recommended by Magistrate Judge

Mannion.[7] The record shows that Defendants Long and Weller acted appropriately and professionally on behalf of NCCYS in response to new criminal charges lodged against Ramer that caused concern in view of his status as an "indicated" sexual offender. Moreover, the conduct of Defendants Long and Weller must be considered in the face of the facts they knew *at the time of the incident*. The fact that Ramer's "indicated" status was subsequently removed is of no moment to our analysis.

We further agree with Magistrate Judge Mannion that Plaintiff's ADA claim is without merit. The record lacks even a scintilla of evidence indicating that Ramer was discriminated against on the basis of his disability by the Defendants. His allegation that the Defendants unlawfully failed to provide him housing while he was displaced is baseless.

Finally, we shall adopt Magistrate Judge Mannion's recommendation that the claims against Defendant Shoop be dismissed. Plaintiff's allegations against Defendant Shoop are that he relayed certain information to NCCYS regarding the stalking and harassment charges against Ramer. However, there is nothing in the record to indicate that Defendant Shoop thereby violated Plaintiff's civil rights. Our review of the record indicates that Defendant Shoop was merely responding to

---

[7] See pages 16 to 21 of the R&R for a thorough analysis of qualified immunity and its applicability to the instant set of facts.

a request for information from a NCCYS investigation, which is likely a common occurrence in the course of his duties as a probation officer. This did not cotnravene Plaintiff's civil rights.

V.  **CONCLUSION**

Accordingly, for the reasons set forth above, we find that the Plaintiff's claims fail as a matter of law, and the R&R shall be adopted in its entirety. An appropriate Order shall issue.